No. 23-10954-H

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

DENISE HUGHES,
as Personal Representative of the Estate of Edwin DeWayne Moss,

*Plaintiff-Appellee,*

v.

Monique N. Locure, Administratrix of the Estate of
DARIAN K. LOCURE,

*Defendant-Appellant.*

---

Interlocutory Appeal from the United States District Court
for the Middle District of Alabama, Northern Division

No. 3:22-cv-00312-RAH

---

## APPELLEE'S BRIEF

---

Victoria L. Dye
Morgan & Morgan Birmingham, PLLC
216 Summit Boulevard, Suite 300
Birmingham, Alabama 35243
T: (659) 204-6363
F: (659) 204-6388
E: vdye@forthepeople.com

*Counsel for the Plaintiff-Appellee,*
*Denise Hughes*

## CERTIFICATE OF INTERESTED PERSONS

The Appellee hereby certifies that the Certified of Interested Persons contained in the Appellant's Brief is complete and without an errors or omissions.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

The Appellee does not request oral argument in this matter.  It is the position of the Appellee that the issues presented in this interlocutory appeal would not be significantly advanced or aided by oral arguments.  However, the Appellee would be pleased to participate in oral arguments should the Court deem it necessary or desirable.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

STATEMENT OF THE ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

I.   THE DISTRICT COURT CORRECTLY FOUND THAT THE
COMPLAINT STATED A VIABLE CLAIM FOR VIOLATION OF
THE DECEDENT'S SUBSTANTIVE DUE PROCESS RIGHTS . . . . . . . . . 9

    A.   *Lewis* Does Not Require Proof of Intent to Harm When There is
Opportunity for Actual Deliberation. . . . . . . . . . . . . . . . . . . . . . . . . . 9

    B.   Deliberate Indifference is the Proper Standard of Culpability
Applicable to Locure's Non-Pursuit, Non-Emergency Conduct . . . . . 15

    C.   The Nature and Content of the Estate's §1983 Claims Sufficiently
Demonstrate a Substantive Due Process Violation . . . . . . . . . . . . . . 17

II.  THE DISTRICT COURT CORRECTLY FOUND LOCURE WAS NOT
ENTITLED TO DISMISSAL OF THE ESTATE'S DUE PROCESS
CLAIM ON THE BASIS OF QUALIFIED IMMUNITY . . . . . . . . . . . . . 20

    A.   The Complaint Sufficiently Alleges a Violation of The Decedent's
Substantive Due Process Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

    B.   The Constitutional Right Violated by Locure Was Clearly
Established At the Time of the Crash . . . . . . . . . . . . . . . . . . . . . . . . 23

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

## <u>TABLE OF CITATIONS</u>

*County of Sacramento v. Lewis,*
    523 U.S. 833 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 9, 10-12, 15

*Blankenship v. Baker Foods, Inc.,*
    2018 WL 6725326 *1 (N.D. Ala. Dec. 21, 2018) . . . . . . . . . . . . . . . . 18

*Checki v. Webb,*
    785 F.2d 534 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Davis v. Carter,*
    555 F.3d 979 (11th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Graham v. Connor,*
    490 U.S. 386 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Hill v. Shobe,*
    93 F.3d 418 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Holloman ex rel. Holloman v. Harland,*
    370 F.3d 1252 (11th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 22

*Hooper v. Columbus Reg'l Healthcare Sys., Inc.,*
    956 So. 2d 1135 (Ala. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*L.S. ex rel. Hernandez v. Peterson,*
    982 F.3d 1323 (11th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15

*Melton v. Abston,*
    841 F.3d 1207 (11th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Mercado v. City of Orlando,*
    407 F.3d 1152 (11th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*Rooney v. Watson,*
    101 F.3d 1378 (11th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

iv

*Waldron v. Spitcher,*
    954 F. 3d 1297 (11th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9, 12

*Whitley v. Albers,*
    475 U.S. 312 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Wilcox v. Fenn,*
    380 F. App'x 837 (11th Cir. 2010) (per curiam) . . . . . . . . . . . . . . . . . . . . . 13

## STATEMENT OF THE ISSUES

I.    Whether the district court correctly declined to use a heightened "intent to harm" standard of culpability to evaluate Locure's voluntary conduct giving rise to the fatal crash in this case;

II.   Whether the district court correctly determined that the allegations and claims set forth in the Third Amended Complaint properly demonstrated a viable constitutional violation sufficient to overcome dismissal at the motion to dismiss stage; and,

III.  Whether the district court correctly denied Locure's claim of qualified immunity at the motion to dismiss stage based upon the allegations and claims within the Complaint demonstrating violation of the decedent's clearly established substantive due process rights.

## <u>STATEMENT OF THE CASE</u>

The crash giving rise to this case occurred approximately 0.5 miles (or less) from the center of downtown Tuskegee, Alabama on US-80 – a 4-lane stretch of highway consisting of two eastbound lanes and two westbound lanes that is populated on both sides by businesses, homes, and residential streets and is governed by a posted speed limit of 25 mph. (Doc. 36, p. 3-4, ¶¶ 12-13.) [1]

Sometime after 5:00 PM on January 19, 2021, the decedent, Edwin Moss, was the front-seat passenger in a 2003 Hyundai Sonata traveling westbound on US-80 in Tuskegee toward Mr. Moss's home off South Lake Street.  (*Id.* at p. 3, ¶ 9.)  At the same time, Deputy Darian K. Locure[2] was traveling eastbound on US-80 in the direction of South Lake Street in a black 2013 Ford F150 owned by the Macon

---

[1]   The Appellant Brief cites to the record on appeal by using the header generated via the district court's e-filing system.  Likewise, the Estate has utilized the same manner of citation to the record herein.  Any citation to documents filed with the Eleventh Circuit following commencement of this interlocutory appeal are preceded by the reference "USCA11."

[2]   Defendant Locure died from cause(s) unrelated to this crash in March 2023, shortly before the district court entered its Memorandum Opinion forming the basis of this interlocutory appeal. (*See generally,* USCA11 Doc. 17, *Mot. to Substitute* (Jun. 6, 2023).)  This Court granted the Locure Estate's motion for substitution as the party-appellant on July 10, 2023. (USCA11 Doc. 19.) However, for the sake of brevity and to alleviate confusion, the Appellee will continue to refer to the Appellant as "Locure" or "Defendant Locure" throughout this filing.

County Sheriff's Department ("MCSD") and provided to Locure in connection with his position as a sheriff's deputy for the department. (*Id.* at ¶¶ 10-11.)

Upon information and belief, Locure was not scheduled to be "on duty" for the MCSD on January 19, 2021. (*Id.* at p. 13, ¶ 51.) However, he was contacted by someone at the sheriff's office that day and instructed to report to the MCSD office to care for his law enforcement canine ("K-9") partner, prompting Locure to drive to the sheriff's office that afternoon. (*Id.*) Sometime after 5:00 PM, Locure departed the sheriff's office in his MCSD vehicle. (*Id.* at ¶ 52.) In doing so, Locure was not responding to an emergency, in "hot pursuit" of a suspect, assisting other law enforcement personnel, nor undertaking to respond to an emergency call. Instead, it appears that he departed the sheriff's office with the intent to travel back to home after completion of his canine duties. (*Id.* at ¶ 55.)

After leaving the MCSD facility, he navigated a short distance toward downtown Tuskegee, where he turned right onto US-80 in the downtown area. (*Id.* at p. 4, ¶ 14.) Upon entering the highway, Locure began driving his MCSD vehicle at or above 70 mph in the left-hand, eastbound lane of US-80 toward the direction of South Lake Street. (*Id.*) Although it was already dark outside, Locure did not activate his vehicle's headlights, running lights, or any other illuminating lamps on his black truck as he drove through the 25-mph zone of US-80 eastbound at speeds exceeding 70 mph. (*Id.* at ¶ 15.) Notably, Locure was under the influence of alcohol

and/or other intoxicating substances as he sped down the road in the dark without activating his vehicle's headlights. (*Id.* at ¶ 16.)

As Locure's unlit, speeding truck neared the area of South Lake Street, Mr. Moss's vehicle reached that turnoff and the driver of his vehicle began making a left turn from westbound US-80 toward the residential neighborhood off South Lake Street (where the decedent and his young children lived). (*Id.* at ¶ 18.) Upon information and belief, the driver of Mr. Moss's vehicle was unable to see or detect Defendant Locure's unlit, black-colored truck as it sped toward them in the left-hand, eastbound lane of US-80. (*Id.* at p. 5, ¶ 19.) On the other hand, Locure was approaching the decedent's vehicle on a downward grade and had an unobstructed view of the roadway ahead and the white sedan carrying the decedent and his driver. (*Id.* at ¶ 20.)

Despite having a clear view of the decedent's vehicle as it began making a turn toward South Lake Street, Locure failed to slow, stop, or otherwise make any evasive maneuvers to avoid crashing into the decedent's vehicle, instead causing or allowing his truck to violently slam into the passenger side of the decedent's sedan. (*Id.*) The impact occurred squarely within the left-hand, eastbound lane of US-80 (*i.e.,* the same lane where Locure had been traveling on approach to the crash location). (*Id.* at ¶ 21.) Furthermore, upon information and belief, Locure was still traveling at or above 70 mph in this 25-mph zone at the point of impact. (*Id.* at ¶ 22.)

4

On impact, the decedent's vehicle flipped several times before coming to an uncontrolled rest in a ditch off the eastbound side of the roadway. (*Id.* at ¶ 23.) After the crash, Locure exited his vehicle but did not undertake any effort to check on or render aid or assistance to the decedent or the driver of his vehicle. (*Id.* at ¶ 24.) Tragically, the decedent sustained massive traumatic injuries in the crash – including several broken bones and extensive internal trauma. (*Id.* at p. 6, ¶ 26.) First responders had to extricate the decedent from his vehicle, and he was subsequently pronounced deceased at the scene of the crash. (*Id.*)

On February 11, 2022, a Macon County, Alabama Grand Jury issued a criminal indictment charging Locure with Felony Reckless Manslaughter for:

> [C]aus[ing] the death of another, to-wit: Edwin Dewayne Moss, by operating a motor vehicle while under the influence of alcohol and/or by driving at an excessive rate of speed and/or operating said motor vehicle without the use of lighted lamps and illuminating devices contrary to and in violation of [Ala. Code §] 13A-6-3(a)(1).

(Doc. 14, p. 4.) Locure died on March 9, 2023, before the criminal case against him could be brought to trial.

## SUMMARY OF THE ARGUMENT

Locure erroneously argues that the "intent to harm" standard of culpability must be employed to evaluate law enforcement conduct in *every* case asserting a due process violation arising from the officer's use and operation of his law enforcement vehicle, regardless of whether the officer had actual time and opportunity to deliberate upon his actions or, rather, was "forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving." *County of Sacramento v. Lewis,* 523 U.S. 833, 853 (1998) (quoting *Graham v. Connor,* 490 U.S. 386, 397 (1989)).  In making this argument, Locure fails to grasp the reasoning behind use of the heightened "intent to harm" standard in cases where an officer must make quick decisions, such as in during high-speed police chases or when responding to emergency calls: that is, to account for the fact that officers in those emergency situations do not have the luxury of time to deliberate and consider their conduct before being forced to act.  Therefore, in recognition of the risks faced by officers and their need to act quickly and decisively in such emergency scenarios, their conduct will not rise to the level of a constitutional violation absent proof that the officer acted with intent to injure or cause harm in some way that is unjustifiable by any governmental interest. *See, e.g., Lewis,* 523 U.S. at 849-54.

The analysis is much different when an officer is not required to make rapid, split-second decisions in dangerous or rapidly-evolving scenarios but, instead, has

the luxury of time and opportunity to deliberate and make reasoned and considered choices. *See id.* In those instances, when an officer fails or refuses to actually deliberate, despite the opportunity to do so, and undertakes a course of wrongful or unlawful conduct (more than mere negligence) that causes the injury or death of another, his indifference can be considered so conscious-shocking, in the constitutional sense, as to rise to the level of a substantive due process violation. *See id.* In other words, "deliberate indifference" is the appropriate standard of culpability to evaluate voluntary conduct undertaken by an officer in a non-emergency scenario when the officer has the ability and opportunity to deliberate and is not being forced to make split-second judgments "in haste, under pressure," or "without the luxury of a second chance." *Id.* at 852 (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)).

In this case, it is undisputed that Locure was not engaged in a "hot pursuit" or emergency response that required him to act quickly and without the benefit of time to deliberate. Instead, he had repeated opportunities to deliberate and weigh his intended course of conduct before he voluntarily chose to get behind the wheel of his sheriff's department vehicle while he was intoxicated and travel along the darkened streets without his headlights while traveling more than twice the posted speed limit. The nature of Locure's egregious conduct – which he voluntarily undertook in a non-emergency situation while operating his sheriff's department vehicle as he traveled home from engaging in official sheriff's department duties –

truly shocks the conscience and gives rise to a viable substantive due process claim for the death of the decedent, who was killed as a direct result of Locure's unlawful conduct. Moreover, any reasonable official, including Locure, was on notice that his egregious and obviously unlawful conduct – including his failure or refusal to slow, stop, or take an evasive action to avoid the decedent's vehicle as it was visible on the roadway ahead – was a violation of the decedent's clearly established substantive due process rights. For those reasons, the district court's denial of Locure's motion to dismiss was proper and must be affirmed by this Court.

## ARGUMENT

I. **THE DISTRICT COURT CORRECTLY FOUND THAT THE COMPLAINT STATED A VIABLE CLAIM FOR VIOLATION OF THE DECEDENT'S SUBSTANTIVE DUE PROCESS RIGHTS.**

### A. *Lewis* Does Not Require Proof of Intent to Harm When There Is Opportunity For Actual Deliberation.

Locure's main argument on appeal is that deliberate indifference does not rise to the level of a substantive due process violation in ***any*** non-custodial case arising from an officer's use and operation of his law enforcement vehicle. (*See* USCA11 Doc. 13, p. 18-34.)    However, this argument oversimplifies the concept of substantive due process and ignores the long-held understanding that, in evaluating whether a due process violation has occurred, the "[c]ontext and the circumstances [of each case] are significant, and the level of culpability required can vary with the context." *Waldron v. Spitcher,* 954 F.3d 1297, 1306 (11th Cir. 2020).  *See also Lewis*, 523 U.S. at 850 (the due process of law "formulates a concept less rigid and more fluid than those envisaged in other specific and particular provisions of the Bill of Rights. Its application is less a matter of rule. Asserted denial is to be tested by an appraisal of the totality of facts in a given case." (internal punctuation omitted)).

Locure relies heavily on *Lewis* (sheriff's deputy engaged in high-speed police pursuit), *Waldron* (deputy responding to emergency rescue call), and *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1331 (11th Circ. 2020) (school resource officer(s) responding to an active shooting) in support of his arguments.  Yet, he fails

9

to acknowledge the critical *factual* distinction that sets those cases apart from the context and circumstances raised by the Estate's Complaint in this case – namely, that the crash giving rise to *Lewis* and the actions of the officers in *Waldron* and *Hernandez* occurred while the officers were conducting a high-speed chase and answering emergency response calls, respectively.[3] Conversely, when the fatal crash in this case occurred, Locure was not engaged in a high-speed chase, responding to an emergency call, or otherwise in a high-pressure, threatening, or potentially dangerous position that forced him to make a split-second judgment call. He had the luxury of time and the ability to actually deliberate upon his actions before he undertook them, unlike the defendant officers in *Lewis, Waldron,* and *Hernandez*.

The different context and circumstances of this case matters greatly. *Waldron* and *Hernandez* heavily referenced *Lewis* in reaching their ultimate holdings. In turn, close reading of the analysis forming the basis of the *Lewis* decision underscores why the district court correctly reasoned that the context and circumstances present in those cases – upon which Locure relied in arguing for application of the "intent to harm" standard of culpability in this case – are factually distinguishable:

> ***As the very term 'deliberate indifference' implies, the standard is sensibly employed only when actual deliberation is practical***, and in

---

[3]    Furthermore, in *Waldron*, the court relied upon a prior Eleventh Circuit decision with almost identical facts in reaching its ultimate holding in the case. Neither the Estate or the district court have identified any Eleventh Circuit cases with identical or substantially and materially similar facts as those at issue here. (*See* Doc. 48, p. 13, *Memorandum Opinion* (Mar. 10, 2023).)

the custodial situation of a prison, forethought about an inmate's welfare is not only feasible but obligatory under a regime that incapacitates a prisoner to exercise ordinary responsibility for his own welfare.

. . .

'[I]n making and carrying out decisions involving the use of force to restore order in the face of a prison disturbance, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison officials alike, in addition to the possible harms to inmates against whom force might be used.... In this setting, a deliberate indifference standard does not adequately capture the importance of such competing obligations, or convey the appropriate hesitancy to critique in hindsight decisions necessarily made in haste, under pressure, and frequently without the luxury of a second chance.'

We accordingly held that a much higher standard of fault than deliberate indifference has to be shown for officer liability in a prison riot. In those circumstances, liability should turn on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.' *The analogy to sudden police chases (under the Due Process Clause) would be hard to avoid*.

Like prison officials facing a riot, the police on an occasion calling for fast action have obligations that tend to tug against each other. Their duty is to restore and maintain lawful order, while not exacerbating disorder more than necessary to do their jobs. They are supposed to act decisively and to show restraint at the same moment, and their decisions have to be made 'in haste, under pressure, and frequently without the luxury of a second chance.' A police officer deciding whether to give chase must balance on one hand the need to stop a suspect and show that flight from the law is no way to freedom, and, on the other, the high-speed threat to all those within stopping range, be they suspects, their passengers, other drivers, or bystanders.

To recognize a substantive due process violation in these circumstances when only midlevel fault has been shown would be to forget that *liability for deliberate indifference to inmate welfare rests upon the luxury enjoyed by prison officials of having time to make unhurried judgments, upon the chance for repeated reflection, largely*

11

> *uncomplicated by the pulls of competing obligations.* **When such extended opportunities to do better are teamed with protracted failure even to care, indifference is truly shocking.** *But when* **unforeseen circumstances demand an officer's instant judgment***, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates 'the large concerns of the governors and the governed.' Accordingly, we hold that* **high-speed chases** *with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment*[.]

*County of Sacramento v. Lewis*, 523 U.S. 833, 852–54 (1998) (emphasis added) (internal citations omitted).

Accordingly, under *Lewis,* "intent to harm" is the proper standard for evaluating an officer's conduct when he or she is confronted with "unforeseen circumstances" that "demand an officer's instant judgment," such as high-speed chase or emergency response scenarios. *Id; see also Waldron,* 954 F.3d at 1310 ("In support of our position, we note that the Supreme Court in *Lewis* held that allegations of recklessness, conscious disregard, and deliberate indifference were insufficient levels of culpability to state a substantive due process claim *in the non-custodial context* **of a high-speed chase**." (emphasis added)).  It was upon that contextual backdrop that the *Lewis* Court reached its finding of no constitutional violation given that the crash occurred during a high-speed police chase and there was no evidence the defendant officer had an intent to injure the plaintiff when the crash occurred.

Locure does not solely rely on motor vehicle cases involving hot pursuits or emergency response scenarios in his Brief.  He also directs the Court to two Eleventh

Circuit cases – *Rooney v. Watson*, 101 F.3d 1378 (11th Cir. 1996) and *Wilcox v. Fenn*, 380 F. App'x 837, 840 (11th Cir. 2010) (*per curiam*) – wherein the defendant officers were not engaged in any emergency response when their complained of conduct occurred. In both cases, the officers drove over the posted speed limit without using emergency lights or sirens, resulting in crashes with other motorists on the roadway. *See Rooney,* 101 F.3d at 1379 (on-duty, on-patrol officer was traveling 73 mph without emergency lights or sirens); and *Wilcox,* 380 Fed. App'x at 838 (on-duty, on-patrol officer was traveling 90 mph on the interstate without emergency lights or sirens). And, in both cases, the court held that the officers' conduct amounted to mere negligence or, at most, gross negligence, and therefore did not meet the minimum culpability threshold for establishing a viable constitutional deprivation under §1983. *See Rooney*, 101 F.3d at 1381; *Wilcox,* 380 Fed. App'x at 840.

At first blush, there appear to be factual similarities between the present case and the conduct at issue in *Rooney* and *Wilcox*, but those parallels are illusory. In that regard, both *Rooney* and *Wilcox* involved allegations of speeding, *and nothing more*. On the other hand, the Estate alleges not only that Locure drove his sheriff's vehicle through the populated downtown Tuskegee area at speeds more than twice the posted limit, but also that he operated his speeding vehicle while he was intoxicated, at night, and without the use of headlights to illuminate his black vehicle as he sped along the darkened streets. Moreover, the Estate avers that when Locure

was confronted with the presence of Mr. Moss's clearly visible vehicle in the roadway ahead, he made no effort to slow, stop, or avoid it before slamming at full speed into the passenger side of the car (as demonstrated by the lack of skid marks in the roadway; the pavement gouges marking the point of impact as squarely within the same lane where Locure's unlit, speeding truck was captured by surveillance video approximately 1000 feet from the point of impact; the massive damage sustained by Mr. Moss's vehicle in the crash; and the post-impact movement of Mr. Moss's vehicle as it was thrown across the roadway and over an embankment).

It is axiomatic that the conduct alleged by the Estate far surpasses the simple act of speeding at issue in *Rooney* and *Wilcox* and constitutes much more than mere negligence or even gross negligence.[4]   Rather, Locure's conduct demonstrates "intentional misuse" of his vehicle, which directly caused the fatal injuries suffered

---

[4]   For the same reason, there is no merit to Locure's argument that "sanctioning claims *like the one in the present case* will open the flood gates to constitutional claims against state officials[.]" (USCA11 Doc. 13, p. 24 (emphasis added).)  Yet, while he claims this case is "nothing more than an automobile accident," (*id.*), the Estate's allegations show this crash was anything but simple or routine.  Throughout his Brief, Locure fails to cite to or rely upon any other case (in this Circuit or beyond) with the same or similar facts as those at issue here, and it is because of the outrageous and especially egregious nature of Locure's conduct that this dearth of factually similar cases exists.  The shocking nature of Locure's conduct when operating his sheriff's vehicle as he traveled from the sheriff's office after conducting official sheriff's deputy duties makes it precisely the kind of case upon which a substantive due process claim should proceed.  Accordingly, the Court is in no danger of opening the flood gates to constitutional claims against state officials by sanctioning claims "like the one in the present case."

by Mr. Moss. *See Lewis,* 523 U.S. at 854 n.13 (*citing Checki v. Webb,* 785 F.2d 534, 538 (5th Cir. 1986) ("Where a citizen suffers physical injury due to a police officer's *negligent use* of his vehicle, no section 1983 claim is stated. It is a different story when a citizen suffers or is seriously threatened with physical injury due to a police officer's *intentional misuse* of his vehicle" (emphasis in original)).

Locure has no viable basis for arguing the heightened "intent to injure" standard must be applied in every non-custodial case, including those where the official has "the luxury . . . of having time to make unhurried judgments" and "the chance for repeated reflection[.]" *Id.*  In short, it is the context and circumstances of each case – and not the mere fact that an officer was operating a motor vehicle in a non-custodial situation – that determines which standard of culpability should be applied when evaluating whether a substantive due process violation has properly been alleged.

## B.    <u>Deliberate Indifference is the Proper Standard of Culpability Applicable to Locure's Non-Pursuit, Non-Emergency Conduct.</u>

The context and circumstances of the present case demonstrate why "intent to harm" is not the proper standard of culpability to be employed in this matter.  Instead, because Locure had the chance to *actually deliberate* upon his entirely voluntary actions before undertaking them, the appropriate standard to be employed is one of deliberate indifference. *See, e.g., Hernandez,* 982 F.3d at 1331 ("Conduct that is not intentionally harmful can violate substantive due process only in contexts "when

15

actual deliberation is practical.'").  To that end, it is undisputed that Locure was not engaged in a "hot pursuit" or carrying out an emergency response of any kind at the time of the fatal crash involving the decedent, Mr. Moss.  As the district court noted, Locure had the luxury of time to consider his conduct, make unhurried judgments, and engage in repeated reflection of his actions leading up to this violent crash.  Despite having time to consider and reflect, Locure nonetheless undertook to operate his vehicle at an excessive speed, in the dark, without the use of headlights, and while under the influence of intoxicating substances.  His conduct continued even in the moments before impact, when he failed to slow, stop, or make any evasive maneuvers to avoid Mr. Moss's vehicle in the roadway ahead, as demonstrated by the absence of skid marks, the location of the impact within the same lane of travel where he was captured on surveillance video just seconds before impact, and the excessive speed of his vehicle at the moment of impact.

The crash at issue in this case – and Locure's conduct giving rise thereto – did not occur during a "hot pursuit" or other emergency response scenario, such that Locure is not entitled to the higher "intent to harm" standard.  Instead, deliberate indifference is the proper standard of culpability where Locure was not acting in response to an emergency, had the luxury of time to actually deliberate and "extended opportunities to do better[,]" yet demonstrated a clear, unequivocal, and "protracted failure even to care," such that his "indifference is truly shocking." *Id.* at

853.  Thus, the Estate has satisfied its burden of asserting a viable claim for violation

of Mr. Moss's substantive due process rights under U.S. Const. Amend. XIV, §1.

**C.  The Nature and Content of the Estate's §1983 Claims Sufficiently Demonstrate a Substantive Due Process Violation.**

Locure repeatedly mischaracterizes the nature of content of the Estate's

Complaint to argue against the existence of a viable substantive due process

violation in this case.  In that regard, Locure altogether ignores the Estate's claims

of "willful" and "unlawful" conduct in some arguments while alternately (and

erroneously) lumping the Estate's separate claims of "willful" and "wanton" conduct

together (as "wanton/willful" conduct) and suggesting that "willful" acts and

omissions are the same as "wanton" and "reckless" conduct. (*Compare* USAC11

Doc. 13, p. 15 (the Estate "*merely alleged wanton/willful conduct and deliberate

indifference*"); *with* p. 25-26 (the Complaint "*alleged only reckless and/or

deliberately indifferent conduct*" and contains no facts from which an intent to injure

could be inferred) (emphasis added).)

Locure's efforts in this regard are patently erroneous.  On its face, the Estate's

Complaint asserts that Locure "acted ***willfully***, wantonly, and/or with knowledge of

and deliberate indifference to the extremely great risk of harm that would likely

result therefrom." (Doc. 36, p. 15, ¶ 61 (emphasis added).)  Likewise, the Estate

avers that Locure "deprived Edwin Moss of his substantive due process right to life

when he operated his vehicle ***unlawfully, willfully***, wantonly, and/or with deliberate

indifference to the great risk of harm that would – and did – result to Mr. Moss[.]"
(*Id.* at ¶ 63 (emphasis added).)

The Estate purposefully set forth separate allegations of "unlawful" and
"willful" and "wanton" conduct in its §1983 claim, as Alabama law recognizes a
distinction between "wanton" and "willful" conduct, with the latter embodying an
intent to act or not act with the purpose to injure or conscious knowledge of injury:

> Under Alabama law 'wantonness' is defined as the 'doing of some act or
> something with reckless indifference to the consequences' or 'a failure
> or omission to do something, with reckless indifference to the
> consequences.' *Weatherly v. Hunter*, 510 So. 2d 151, 152 (Ala. 1987).

> To constitute ***willful conduct***, there 'must be knowledge of danger
> accompanied with ***a design or purpose to inflict injury***.' *English v.
> Jacobs*, 82 So. 2d 542, 545 (Ala. 1955). ***Thus, wantonness differs from
> willfulness*** 'in that intentional injury requires both knowledge of the
> danger and a design or purpose to inflict injury.' *Id.*

*Blankenship v. Baker Foods, Inc*., 2018 WL 6725326, *1, *4 (N.D. Ala. Dec. 21,
2018) (emphasis added). *See also Hooper v. Columbus Reg'l Healthcare Sys., Inc*.,
956 So. 2d 1135, 1140 (Ala. 2006) ("To constitute 'willful or intentional injury,' there
must be knowledge of danger accompanied with a design or purpose to inflict injury,
whether the act be one of omission or commission.")

The Complaint expressly avers that Locure acted ***willfully*** (and unlawfully)
when he operated his vehicle while under the influence at speeds more than double
the posted limit; sped through the downtown area at night in his black truck without
using headlights; failed to slow, stop, or try to avoid the decedent's vehicle at any

point before slamming into his car at speed; failed to render aid and assistance to his victims before leaving the scene of the crash; and directly caused Mr. Moss to die. (Doc. 36, p. 15, ¶¶ 61, 63.)   Those express allegations and factual assertions constitute viable claims, at this stage of proceedings, that Locure "knew an accident was imminent but consciously and culpably refused to prevent it." *Hill v. Shobe*, 93 F.3d 418, 421 (7th Cir. 1996).

As the district court correctly pointed out, the Estate's Complaint describes conduct by Locure that exceeds mere negligence or even gross negligence. (Doc. 48, p. 11 ("[A]llegations of driving 50 mph over the posted speed limit while intoxicated at night with no lights easily could be found by a reasonable jury to far exceed a level of gross negligence."))  As discussed in § I. A., *supra*, the Estate vehemently disputes that "intent to injure" is required to establish a viable substantive due process claim in every case involving a motor vehicle collision with a police officer. However, even if the Court is inclined to agree with Locure on this point, when viewing the Complaint's allegations of fact and the express claims of willful and unlawful conduct set out therein, the Estate has satisfied its burden at the motion to dismiss stage of pleading a viable substantive due process claim against Locure. Accordingly, the district court properly denied Locure's motion to dismiss the Estate's §1983 claim, and that denial is due to be affirmed by this Court.

19

## II. THE DISTRICT COURT CORRECTLY FOUND LOCURE WAS NOT ENTITLED TO DISMISSAL OF THE ESTATE'S DUE PROCESS CLAIM ON THE BASIS OF QUALIFIED IMMUNITY.

When, as here, government officials are sued in their individual capacity, qualified immunity operates to protect the official from liability "unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). *See also Melton v. Abston,* 841 F.3d 1207, 1220-21 (11th Cir. 2016) (qualified immunity "does not offer protection if an official knew or reasonably should have known that the actions he took within the sphere of official responsibility would violate the constitutional rights of the plaintiff."). To establish entitlement to qualified immunity, "the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly unconstitutional acts took place." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004) (emphasis omitted). If the official makes this threshold showing, the burden shifts to the plaintiff to prove that the official is not entitled to qualified immunity by showing "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Id.*

Appellate review of a district court's decision to grant or deny the defense of qualified immunity on a motion to dismiss is conducted de novo, with the appellate court "accepting the factual allegations in the complaint as true and drawing all

reasonable inferences in the plaintiff's favor" in determining whether the alleged facts "show the alleged conduct violated the person's constitutional rights." *Davis v. Carter*, 555 F.3d 979, 981 (11th Cir. 2009). Locure asserted, both in the district court and on interlocutory appeal, that he is entitled to qualified immunity because he was operating his sheriff's department vehicle in the scope of his discretionary authority at the time of this crash and because there is no binding precedent that would have alerted every reasonable official that his conduct on the date of this crash was a violation of substantive due process under the 14th Amendment, based on the allegations set forth in the Estate's Complaint. (*See, e.g.,* Doc. 9, p. 20.) Conversely, the Estate claims Locure's conduct in causing this fatal crash violated Mr. Moss's clearly-established substantive due process rights, and the Complaint clearly sets forth facts demonstrating this violation.

Regarding the condition precedent of actions within the defendant's discretionary authority, Locure argues he was acting within the scope of that authority when this crash occurred because he was driving his sheriff's department vehicle home after conducting official sheriff's deputy duties (*i.e.,* caring for his law enforcement canine at the request of the sheriff). (Doc. 48, p. 16-17). In response, the Estate argued that Locure's act of driving in the dark, without headlights, at more than twice the posted speed limit, and while intoxicated does not constitute conduct undertaken within the scope of Locure's discretionary authority. (*Id.* at p. 17). The

district court noted that when determining if conduct was undertaken within an individual's discretionary authority, courts must "look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Holloman*, 370 F.3d at 1266. Accordingly, the district court found that Locure had satisfied the condition precedent, at the motion to dismiss stage, of showing that he was acting within his discretionary authority at the time of the crash made the basis of this case, thus shifting the burden to the Estate to prove why Locure is not entitled to qualified immunity in this case. (*Id.*)

A.     **The Complaint Sufficiently Alleges a Violation of The Decedent's Substantive Due Process Rights.**

As discussed in depth in Section I, *supra*, the Estate has alleged sufficient facts and claims regarding Locure's conduct in causing the death of Mr. Moss, such that the Complaint sets forth a viable claim for violation of the decedent's substantive due process rights. Accordingly, the Estate has properly satisfied the first prong of overcoming Locure's claim of qualified immunity in this case. *See Holloman*, 370 F.3d at 1264.

## B.     <u>The Constitutional Right Violated by Locure Was Clearly Established At the Time of the Crash.</u>

The second prong needed to overcome a claim of qualified immunity is evidence from the plaintiff that the right violated by the defendant was clearly established at the time of the conduct at issue in the case. *See id.* To satisfy this requirement, the plaintiff can "show that a materially similar case has already been decided, giving notice to the police[;]" *or* "show that a broader, clearly established principle should control the novel facts in this situation[;]" *or* "show that this case fits within the exception of conduct which so obviously violates that constitution that prior case law is unnecessary." *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005) (internal citations omitted).

Neither the Estate nor the district court identified any Eleventh Circuit cases with materially similar facts as those at issue in this case. (*See* Doc. 48, p. 13.) Moreover, contrary to Locure's assertions, none of the United States Supreme Court or Eleventh Circuit decisions cited in his Brief are "materially similar" to the facts in this case. *See Mercado*, 407 F.3d at 1159 (case law that is "materially similar" must come from decisions of the Supreme Court or the Eleventh Circuit with facts that are truly substantially and materially similar to the facts of the case at bar).

Given the outrageous and clearly egregious nature, character, and extent of Locure's conduct in causing the crash that killed Mr. Moss, this case fits within the exception of conduct "which so obviously violates the constitution that proper case

law is unnecessary" to establish the established nature of the substantive rights that were violated. *Id.* As specifically detailed within the Complaint and throughout this Brief, this crash occurred when Locure left the sheriff's department facilities after performing official duties for the sheriff and got behind the wheel of his sheriff's department vehicle. He began driving down the roadways of downtown Tuskegee in his sheriff's department vehicle despite the fact that he was intoxicated. Moreover, even though it was dark outside, his failed or refused to engage the headlights on his black vehicle. Furthermore, as he drove in the dark without headlights and while under the influence, his vehicle reached speed more than double the posted limit, and he continued to drive at that excessive speed on approach to, and at the moment of, impact with the side of the decedent's vehicle.

At the time of this crash, Locure was a law enforcement officer tasked with knowing, following, and upholding the law. Locure's conduct – which he carried out despite the luxury of time and multiple opportunities to deliberate and choose a different course of action – were such that "every reasonable law enforcement official would know that this conduct – as unlawful and unjustifiable as it was – is so facially egregious and conscious shocking that it violates clearly established law protecting the life interest of law-abiding persons." (Doc. 48, p. 19-20.) Accordingly, the Estate's Complaint properly satisfies both prongs needed to overcome Locure's assertion of qualified immunity at the motion to dismiss stage,

such that the district court's ruling must be upheld and the Estate must be allowed to proceed with litigation of its substantive due process claim against Locure.

## <u>CONCLUSION</u>

The district court properly denied Locure's motion to dismiss the Estate's § 1983 claim in this case.  Because the Estate has pled sufficient facts and legal claims to overcome Locure's assertion of qualified immunity and establish a plausible violation of the decedent's substantive due process rights, the district court's ruling must be upheld, and the Estate must be permitted to move forward with litigation of its § 1983 claim against Defendant Locure.

**DATE:**  August 7, 2023

*s/ Victoria L. Dye*
Victoria L. Dye
(Alabama Bar ID: ASB-4887-R77D)
MORGAN & MORGAN BIRMINGHAM, PLLC
216 Summit Boulevard, Suite 300
Birmingham, Alabama 35243
T: (659) 204-6363
F: (659) 204-6388
vdye@forthepeople.com

*Counsel for the Plaintiff-Appellee,*
*Denise Hughes*

**CERTIFICATE OF COMPLAINCE WITH TYPE-VOLUME LIMIT,
TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

This undersigned hereby certifies that this document complies with the page and word limitations of Fed. R. App. P. 32(a)(7)(A)-(B), in that it does not exceed 30 pages in length and contains 6,181 words, excluding those parts of the document exempted by Fed. R. App. P. 32(f).

Further, this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) in that it was prepared using Times New Roman in 14-point font.

*s/ Victoria L. Dye*
VICTORIA L. DYE
*Counsel for Plaintiff-Appellee Hughes*
Date: August 7, 2023

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on August 7, 2023, I filed the foregoing APPELLEE'S BRIEF with the Court via the CM/ECF system and send a copy of the same via electronic and U.S. Mail delivery to the following persons of record:

Constance Caldwell Walker
J. Mark Cowell
WEBB MCNEILL WALKER P.C.
One Commerce Street, Suite 700
Montgomery, Alabama 36104
ccw@wmwfirm.com
mcowell@wmwfirm.com
*Counsel for the Defendant-Appellant, Darian Locure*

*s/ Victoria L. Dye*
Victoria L. Dye
*Counsel for the Plaintiff-Appellee,*
*Denise Hughes*

27